KAREN P. HEWITT
United States Attorney
CARLOS O. CANTU
Special Assistant United States Attorney
Government Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199
Email: carlos.cantu@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES, | ) | Criminal Case No. 08CR0880-LAB |
|---|---|---|
| Plaintiff, | ) ) ) | DATE: June 16, 2008 TIME: 2:00 p.m. Before Honorable Larry A. Burns. |
| v | ) ) ) | UNITED STATES' MOTIONS IN LIMINE TO: |
| | )(A) | EXCLUDE ALL WITNESSES EXCEPT CASE AGENT; |
| JOSE REFUGIO ALVARADO-NOLASCO, Defendant. | )(B) | EXCLUDE EVIDENCE WHY DEFENDANT RE-ENTERED THE UNITED STATES; |
| | )(C) | EXCLUDE EVIDENCE REGARDING PRIOR RESIDENCY; |
| | )(D) | ADMIT A-FILE DOCUMENTS; |
| | )(E) | ADMIT EXPERT TESTIMONY; |
| | )(F) | PROHIBIT REFERENCE TO PUNISHMENT. ETC.; |
| | )(G) | PRECLUDE ARGUMENT REGARDING WARNING; |
| | )(H) | PROHIBIT ARGUMENT REGARDING DURESS AND NECESSITY; |
| | )(I) | PROHIBIT REFERENCE TO DOCUMENT DESTRUCTION; |
| | )(J) | ADMIT RULE 609 EVIDENCE; |
| | )(K) | ADMIT DEPORTATION TAPE OR TRANSCRIPT; |
| | )(L) | PROHIBIT COLLATERAL ATTACK OF THE DEPORTATION; |
| | )(M) | PROHIBIT SELF-SERVING HEARSAY; and |
| | ) ) ) ) | TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

//

//

//

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Carlos O. Cantu, Special Assistant U.S. Attorney, and hereby files its Motions In Limine in the above-referenced case. Said motions are based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

## I

## STATEMENT OF THE CASE

On March 26, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with being a deported alien found in the United States, in violation of Title 8, United States Code, Section 1326. Defendant was arraigned on the Indictment on May 5, 2008, and entered a not guilty plea. On April 21, 2008, Defendant filed motions to compel discovery and grant leave to file further motions. The Government responded to these motions on April 28, 2008. Also on April 28, 2008, the Government filed motions for reciprocal discovery and fingerprint exemplars. On May 9, 2008, the Court denied Defendant's motion to file further motions and granted Government's motion for reciprocal discovery. The Court denied the Government's motion for fingerprint exemplars.

On May 9, 2008, the Court set a trial date of June 17, 2008, 9:00 a.m., and a motion *in limine* date of June 16, 2008, at 2:00 p.m.

## II

## STATEMENT OF FACTS

### A.    INSTANT OFFENSE

On March 1, 2008, at approximately 9:00 a.m., U.S. Border Patrol Agent W. Bowes responded to the activation of a seismic intrusion device near Barrett Junction, California. This area is located approximately three and a half miles west of the Tecate, California, Port of Entry, and one mile north of the international boundary between the Untied States and Mexico. Agent Bowes arrived at the location of the seismic intrusion device and noticed footprints in the area. Agent Bowes began walking northbound on a trail that is commonly used by illegal aliens to further their illegal entry into the United States.

At approximately 9:30 a.m., Agent Bowes observed three subjects walking north on the trail ahead of him.  Agent Bowes approached the subjects, identified himself as a Border Patrol Agent in both the English and Spanish languages, and questioned them as to their immigration status.  All three subjects, including the Defendant, stated they were born in Mexico and were citizens of Mexico.  Agent Bowes then asked the subjects, including the Defendant, if they possessed any documents to enter or remain in the United States; all three subjects, including the Defendant, stated they did not.  Agent Bowes then arrested all three subjects and transported them to the Brown Field Border Patrol station for further processing.   Defendant was then Mirandized and invoked.

At the Brown Field Border Patrol station, Agent Bowes conducted queries through the National Crime Information Center (NCIC) database, the Treasury Enforcement Communications System (TECS), the Deportable Alien Control System (DACS), and the Central Index System (CIS).  Defendant's fingerprints were also obtained and queried through the Integrated Automated Fingerprint Identification System (IAFIS) and the Automated Biometric Identification System (IDENT).  The results of these queries confirmed that Defendant was a citizen of Mexico and that he had a prior criminal record.

### B.     POST-MIRANDA STATEMENT

Border Patrol Agent Bowes advised Defendant of his Miranda rights using service form I-214.  Defendant elected to invoke his rights and remain silent.

### C.     DEFENDANT'S CRIMINAL HISTORY

In November of 2000, Defendant was convicted of petty theft and was sentenced to jail for five days.  In May of 2002, Defendant was convicted of misdemeanor illegal entry in the U.S. District Court of Arizona and sentenced to 75 days in jail.  In November of 2002, Defendant was convicted of re-entry after deportation in the U.S. District Court of Arizona and sentenced to 18 months imprisonment and 36 months of supervised release.   In January 2006, Defendant was convicted of re-entry after deportation in the U.S. District Court of Southern California and sentenced to 24 months imprisonment and 3 years of supervised release.

### D.     DEFENDANT'S IMMIGRATION HISTORY

On September 9, 2007, Defendant was removed to Mexico through San Ysidro, California,

1   pursuant to an Order of Reinstatement.  On May 7, 2005, Defendant was removed to Mexico through

2   San Ysidro, California, following an order of Removal from an Immigration Judge.  On February 24,

3   2004, Defendant was removed to Mexico through San Ysidro, California, pursuant to an Order of

4   Reinstatement.  On October 25, 2002, July 19, 2002, April 30, 2002, Defendant was removed to Mexico

5   through Nogales, Arizona, pursuant to Reinstatement Orders.  On April 17, 2002, Defendant was

6   removed to Mexico through San Ysidro, California, pursuant to a Reinstatement Order.  On January 9,

7   2001, Defendant was removed to Mexico through Nogales, Arizona, following a removal hearing before

8   an Immigration Judge on the same date in Tucson, Arizona.

### III

### MOTIONS IN LIMINE

**A.    THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE
EXCEPTION OF THE GOVERNMENT'S CASE AGENT**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be

essential to the presentation of the party's cause" should not be ordered excluded from the court during

trial.  The case agent in the present matter has been critical in moving the investigation forward to this

point and is considered by the United States to be an integral part of the trial team.  The United States

requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

**B.    THE COURT SHOULD PROHIBIT REFERENCE TO WHY THE DEFENDANT
REENTERED THE UNITED STATES**

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief

that he was entitled to do so.  Defendant may also attempt to offer evidence of the reason for his being

in the United States, or alternatively, his belief that he was entitled to be here.  The Court should

preclude him from doing so.  Evidence of <u>why</u> Defendant violated Section 1326 is patently irrelevant

to the question of <u>whether</u> he did so -- the only material issue in this case.  Rule 401 defines "relevant

evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence
> to the determination of the action more probable or less probable than it would be
> without the evidence.

Fed. R. Evid. 401.

Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402.  Here,

the reason why Defendant reentered the United States, and his belief that he was justified in doing so, is irrelevant to whether he violated Section 1326.  Likewise, the reason why Defendant was in the United States, and his belief that he was justified in being here, is also irrelevant.

The case of <u>United States v. Komisaruk</u>, 885 F.2d 490 (9th Cir. 1980), is illustrative.  There, Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer.  <u>Id.</u> at 491.  On appeal, she argued that the district court erred in granting the government's motions <u>in limine</u> to preclude her from introducing her "political, religious, or moral beliefs" at trial. <u>Id.</u> at 492.  In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions.  <u>Id.</u> at 492-93.  The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," and the Ninth Circuit affirmed.  <u>Id.</u> at 492.  Similarly here, the reason why Defendant reentered the United States and his belief that he was entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, are irrelevant to any fact at issue in this case.

## C.    <u>THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY</u>

If Defendant seeks to introduce evidence at trial of his former residence in the United States, legal or illegal, the Court should preclude him from doing so.  Such evidence is not only prejudicial, but irrelevant and contrary to Congressional intent.

In <u>United States v. Ibarra</u>, 3 F.3d 1333, 1334 (9th Cir. 1993), the district court granted the United States' motion <u>in limine</u> to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution.  <u>Id.</u>, <u>overruled on limited and unrelated grounds by United States v. Alvarado-Delgado</u>, 98 F.3d 492, 493 (9th Cir. 1996).  He appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant.  <u>Id.</u>

Similarly, in <u>United States v. Serna-Vargas</u>, 917 F. Supp. 711 (C.D. Cal. 1996), the Defendant filed a motion <u>in limine</u> to introduce evidence of what she termed "de facto" citizenship as an

affirmative defense in a Section 1326 prosecution.  <u>Id.</u> at 711.  Specifically, she sought to introduce evidence of:

     (1) involuntariness of initial residence;

     (2) continuous residency since childhood;

     (3) fluency in the English language; and

     (4) legal residence of immediate family members.

<u>Id.</u> at 712.  The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326."  <u>Id.</u> at 712.  The court also noted that admission of the evidence would run "contrary to the intent of Congress."  <u>Id.</u>  In particular, the court stated that, under Section 212 of the Immigration and Naturalization Act of 1952 (codified at 8 U.S.C. § 1182(c)), the Attorney General may exercise his discretion not to deport an otherwise deportable alien, if the alien has lived in the United States for 7 years. <u>Id.</u> at 712-13.  The factors which the Defendant relied upon to establish her "de facto" citizenship, the court noted, are "among the factors the Attorney General considers in deciding whether to exercise this discretion."  <u>Id.</u> at 713.

Thus, the court reasoned, "the factors that [the Defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported."  <u>Id.</u>  Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent."  <u>Id.</u>  In particular, "under the scheme envisioned by Congress, *an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, and not to juries*."  <u>Id.</u> (emphasis added).

**D.**    <u>**THE COURT SHOULD ADMIT A-FILE DOCUMENTS**</u>

The Government intends to offer documents from the Alien Registration File, or "A-file," that correspond to Defendant's name and A-number in order to establish Defendant's alienage and prior deportation as well as the lack of documentation showing  that when he attempted to reenter the United States, Defendant had not sought or obtained authorization from the Secretary of the Department of Homeland Security.  Specifically, the United States will offer the April 27, 2005 Order of the Immigration Judge, the May 5, 2005 Warrant of Deportation, the April 25, 2005 Notice to Appear, the September 7, 2007 Notice of Intent to Reinstate Prior Order, the September 7, 2007 Reinstatement, and

a Certificate of Non-Existence of Record, or CNR.[1]  These documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6) and should be admitted.

The Ninth Circuit has addressed the admissibility of A-File documents in <u>United States v. Loyola- Dominguez</u>, 125 F.3d 1315 (9th Cir. 1997).  There, Loyola-Dominguez appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from his "A-file."  <u>Id.</u> at 1317.  The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the Defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. The Defendant in <u>Loyola-Dominguez</u> argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses.  The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records.  <u>Id.</u> at 1318.  The court first noted that documents from a Defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception."  <u>Id.</u> (quoting <u>United States v. Hernandez-Rojas</u>, 617 F.2d 533, 534-35 (9th Cir. 1980)).  The court also held that such documents are self-authenticating and, therefore, do not require an independent foundation.  <u>Id.</u>

The Ninth Circuit has consistently held that documents from a Defendant's immigration file are admissible in a § 1326 prosecution to establish the Defendant's alienage and prior deportation.  <u>See United States v. Bahena-Cardenas</u>, 411 F.3d 1067 (9thCir. 2005) (warrant of deport is nontestimonial because it is not made in anticipation of litigation and is a routine, objective cataloging of unambiguous factual matter.);  <u>United States v. Mateo-Mendez</u>, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence); <u>United States v. Contreras</u>, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing transcript); <u>United States v. Hernandez-Rojas</u>, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); <u>United States v. Dekermenjian</u>, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of the Immigration and

---

[1]The Certificate of Non-Existence of Records has been ordered by the United States' case agent; at this time the CNR has not been received.  The United States will produce the CNR to Defendant as soon as it is received.

Naturalization Service" as business records, noting that records would also be admissible as public records).

### 1. **The Court Should Admit the CNR**

At trial, the United States anticipates introducing a Certificate of Nonexistence of Record, or CNR, stating that there is no record of Defendant's having received consent to reenter the United States. As the Ninth Circuit recently held, the CNR is nontestimonial evidence and may be admitted. United States v. Cervantes-Flores, 421 F.3d 825, 834 (9th Cir. 2005).

### 2. **The Court Should Admit the Warrant of Deportation**

At trial, the United States will offer Defendant's May 5, 2005 Warrant of Deportation and Defendant's September 7, 2007 Warrant of Deportation, or I-205, to show that Defendant was physically removed from the United States pursuant to the immigration judge's order and the re-instated order. Similar to the CNR, a warrant of deportation contains a "routine, objective, indeed mechanical recording of an unambiguous factual matter" and is admissible, nontestimonial evidence. United States v. Bahena-Cardenas, 411 F.3d 1067, 1075 (9th Cir. 2005) (citation omitted).

Defendant's Warrant of Deportation will be relevant at trial for several reasons. First, the United States bears the burden of proving beyond a reasonable doubt that Defendant was physically removed from the United States after the order of deportation and before his entry on March 1, 2008. See id. at 1074 (citing United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001)); see also United States v. McClelland, 941 F.2d 999, 1003 (9th Cir. 1991) ("Clearly, the requirement that the Government prove beyond a reasonable doubt every element of the charged offense is of the most fundamental nature.").

In addition to proving a prior deportation, the Warrant also provides circumstantial evidence of two other elements – alienage and lack of permission to be in the United States. See United States v. Hernandez-Herrera, 273 F.3d 1213 (9th Cir. 2001) ("We have held that deportation documents are admissible to prove alienage under the public records exception to the hearsay rule"). Both Warrants shows that Defendant was still subject to deportation, when he was apprehended on March 1, 2008.

//

//

8                                                                08CR0880-LAB

1    //

2

3    **E.    THE COURT SHOULD ADMIT EXPERT TESTIMONY**

4        At trial, the Government intends to offer testimony of its fingerprint analyst to identify the

5    Defendant as the person who was previously deported.  Defendant was notified of the United States'

6    intention to use a fingerprint expert in the Government's April 28, 2008 motion requesting fingerprint

7    exemplars.

8        If specialized knowledge will assist the trier-of-fact in understanding the evidence or

9    determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in

10   question. Fed. R. Evid. 702.  Determining whether expert testimony would assist the trier-of-fact in

11   understanding the facts at issue is within the sound discretion of the trial judge.  United States v. Alonso,

12   48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994).  An

13   expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon

14   are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.  In addition, an expert

15   may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the

16   trier-of-fact.  Fed. R. Evid. 704.

17       It is anticipated the Government's fingerprint expert will testify that based upon fingerprint

18   comparisons, Defendant was the same person deported on May 7, 2005, and September 7, 2007, and

19   who  reentered the United States on or about March 1, 2008.  In addition, the Government's fingerprint

20   expert may testify to establish the foundation for any prior acts or convictions the United States seeks

21   to use at trial.  This testimony should be admitted under Rules 702 and 703.

22   **F.    THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE,
         FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

23       Evidence of, and thus argument referring to, Defendant's health, age, finances, education

24   and potential punishment is inadmissible and improper.

25       Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible."  Rule

26   403 provides further that even relevant evidence may be inadmissible "if its probative value is

27   substantially outweighed by the danger of unfair prejudice."  The Ninth Circuit Model Jury Instructions

28   explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices,

1    or sympathy." § 3.1 (2000 Edition).[2/]

2           Reference to Defendant's health, age, finances, education and potential punishment may be

3    relevant at sentencing. However, in an illegal entry trial, such reference is not only irrelevant and

4    unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

5    **G.    THE COURT SHOULD PRECLUDE DEFENDANT FROM ARGUING PERMISSION
            TO REENTER BASED UPON WARNING TO ALIEN DEPORTED**

6           The Court should preclude any argument that Defendant believed he was not required to obtain

7    the permission from the Attorney General or his designated successor the Secretary of the Department

8    of Homeland Security prior to reentry into the United States or that Defendant believed he had

9    permission to enter the United States based on any confusion or alleged error in the execution of the

10   I-294 Warning to an Alien Deported or statements made by the immigration judge at the April 27, 2005

11   deportation hearing. See United States v. Ramirez-Valencia, 202 F.3d 1106, 1109-10 (9th Cir. 2000)

12   (holding that such a claim is legally insufficient and any such argument improper).

13

14   **H.    THE COURT SHOULD PRECLUDE ARGUMENT CONCERNING
            DURESS AND NECESSITY**

15          Courts have specifically approved the pretrial exclusion of evidence relating to a legally

16   insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980)

17   (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S.

18   826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the

19   evidence, as described in the Defendant's offer of proof, is insufficient as a matter of law to support the

20   proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

21          In order to rely on a defense of duress, Defendant must establish a prima facie case that:

22   (1)    Defendant committed the crime charged because of an immediate threat of death or

23          serious bodily harm;

24   (2)    Defendant had a well-grounded fear that the threat would be carried out; and

25   (3)    There was no reasonable opportunity to escape the threatened harm.

26

27   _____

28          [2/]    Additionally, it is inappropriate for a jury to be informed of the consequences of their
     verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992).

08CR0880-LAB

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997.  If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense.  See, e.g., Bailey, 444 U.S. at 416.

A Defendant must establish the existence of four elements to be entitled to a necessity defense:

(1)    that he was faced with a choice of evils and chose the lesser evil;

(2)    that he acted to prevent imminent harm;

(3)    that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4)    that there was no other legal alternative to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985).  A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense.  The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**I.    THE COURT SHOULD PROHIBIT EXAMINATION OR REFERENCE TO ALLEGED DOCUMENT DESTRUCTION AND POOR RECORD KEEPING**

The United States seeks to exclude the Defendant from making reference or eliciting testimony regarding (former) Immigration and Naturalization Services' ("INS"), now Department of Homeland Security's record keeping or access to information and records.  Specifically, the United States seeks to preclude reference to argument that (1) INS computers are not fully interactive with other federal agencies' computers, (2) over 2 million documents filed by immigrants have been lost or forgotten, (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States, (4) the custodian of the A-File never checked with other federal agencies to inquire about documents relating to the Defendant.  Such argument is irrelevant based upon the facts of this case as there has been no proffer or mention by the Defendant that he ever made application to seek reentry after

1    deportation.  See United States v. Rodriguez-Rodriguez, 364 F.3d 1142 (9th Cir. 2004) (affirming

2    District Court Judge Lorenz's rulings to deny such testimony in a § 1326 "found in" case with similar

3    facts).

4         The Ninth Circuit Court of Appeals held in Rodriguez-Rodriguez that any such testimony or

5    cross examination seeking to elicit such testimony is properly barred as irrelevant.  Id. at 1146.  The

6    Ninth Circuit explicitly rejected Defense counsel's claim that the District Court's exclusion of the

7    anticipated testimony violates the Confrontation Clause.  Instead, it declared that "none of the that

8    information is relevant on the facts of this case, because it is uncontested that Rodriguez never made

9    any application to the INS or any other federal agency."  Thus, absent at a minimum a proffer that

10   Defendant had in fact applied for or obtained permission to enter or remain in the United States in this

11   instant case, any such line of inquiry on cross examination or on direct testimony is irrelevant and

12   properly excludable.

13        Additionally, the United States seeks to preclude reference to shredding of immigration

14   documents by a (former) INS contractor as set forth in United States v. Randall, et al., Criminal Case

15   No. SA CR 03-26-AHS (C.D. Cal. 2003) unless the Defendant testifies or offers evidence that (1) he

16   did in fact apply for permission to reenter the United States from the Attorney General, or his designated

17   successor, the Secretary of the Department of Homeland Security and (2) that such a document would

18   have been stored at that particular facility where the shredding occurred in the Randall case.   Any

19   reference of document destruction is irrelevant and unfairly prejudicial unless there is some evidence

20   offered by the Defendant at trial that he did in fact seek permission to reenter the United States.  See

21   Fed. R. Evid. 401-403.  Moreover, even if the Defendant offers evidence that he did apply, there must

22   be some showing that his application would have been stored at the facility which is the subject of the

23   Randall case during the time of the alleged shredding of the documents.   Otherwise, it is immaterial

24   and irrelevant whether a contractor of (former) INS destroyed documents at the INS California Service

25   Center in Laguna Niguel, California because the Defendant did not apply, or if he did apply, his

26   application was not stored there, and therefore, could not have been effected.  Such  testimony as well

27   as any such statements asserted in Defendant's opening or closing arguments would be unfairly

28   prejudicial to the United States and likely to cause confusion to the jury because such unsupported

blanket allegations or references of document destruction or poor record keeping without any showing

by the Defendant that he applied for permission to reenter would be misleading. Accordingly, the

United States seeks an order precluding such argument.

**J.    THE COURT SHOULD ADMIT RULE 609 EVIDENCE**

The United States intends to use the Defendant's prior convictions for impeachment purposes

under Rule 609. Specifically, the United States intends to inquire about Defendant's May 6, 2002,

conviction for illegal entry in violation of 8 U.S.C. §1325 for which he was sentenced to 75 days in

custody, Defendant's November 2, 2002 conviction for re-entry after deportation in violation of 8

U.S.C. §1326 for which he was sentenced 18 months imprisonment, and Defendant's January 3, 2006

conviction for re-entry after deportation in violation of 8 U.S.C. §1326 for which he was sentenced to

24 months imprisonment, should he testify. The United States will also use Defendant's convictions

should Defendant contend that he had permission to enter the United States or that he did not need

permission to enter. If Defendant testifies at trial, he will place his credibility squarely at issue, and the

United States should be able to inquire in particular about his recent immigration-related convictions.

Federal Rule of Evidence 609(a) provides in pertinent part

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other
> than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if
> the crime was punishable by death or imprisonment in excess of one year under the law
> under which the witness was convicted, and evidence that an accused has been convicted
> of such a crime shall be admitted if the court determines that the probative value of
> admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence
> that any witness has been convicted of a crime shall be admitted if it involved dishonesty
> or false statement, regardless of punishment.

Fed. R. Evid. 609(a). The Ninth Circuit has listed five factors that the district court should balance in

making the determination required by Rule 609. United States v. Browne, 829 F.2d 760, 762-63 (9th

Cir. 1987). Specifically, the court should consider 1) the impeachment value of the prior crime; 2) the

point in time of the conviction and the witness's subsequent history; 3) the similarity between the past

crime and the charged crime; 4) the importance of the Defendant's testimony; and 5) the centrality of

the Defendant's credibility. Id. at 762-63. See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

Here, Defendant's felony convictions can be used as 609 evidence. Several of the Browne

factors weigh in favor of admitting the Defendant's felony conviction to attack his credibility. First, the

impeachment value of Defendant's felony convictions, which show his disregard for the law, is high.

As such, his criminal record would cast doubt on Defendant's credibility should he testify.  Second, the importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably testify if he intends to challenge one of the elements of the offense.  For example, if Defendant testifies that he had received, or did not need, permission to enter the United States, he would essentially "open the door" to his immigration and criminal history.  In addition, because such a challenge could only be developed through Defendant's own testimony, his credibility in asserting such a challenge would be central to the case.  Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by sanitizing his convictions and with a limiting jury instruction.

Accordingly, the Government should be allowed to introduce evidence of Defendant's prior felony convictions under Rule 609(a) if he elects to testify at trial.

**K.    THE COURT SHOULD PROHIBIT COLLATERAL ATTACK OF DEFENDANT'S PRIOR DEPORTATION**

Defendant should not be permitted to argue the lawfulness of his deportation to the jury at trial.  See United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996) (en banc).  The lawfulness of the deportation is not an element of the offense under Section 1326, so this issue should not be presented to or determined by a jury.  Id. at 493.

Moreover, in United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000), the Ninth Circuit held that a Defendant who previously waived his right to appeal cannot collaterally attack his deportation:

> A Defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order.  Accordingly, a valid waiver of the right to appeal a deportation order precludes a later collateral attack.

(citations omitted).

In this case, Defendant validly waived his right to appeal his deportation order in 2005 and, therefore, should be precluded from collaterally attacking his deportation.  It would be inappropriate to raise this issue before a jury, which is not tasked with determining the validity of the deportation.

**L.    THE COURT SHOULD ADMIT THE DEPORTATION TAPE OR TRANSCRIPT**

The United States should be permitted to play the audio tape of the 2005 deportation hearing

1   because Defendant admits therein his citizenship as part of the colloquy.  Such an admission is relevant

2   to the element of alienage.  In addition, the United States requests that the jury have a copy of the

3   transcript of the deportation hearing proceeding while the audio tape is played to assist the jury in

4   understanding what was said.

5   **M.      THE COURT SHOULD EXCLUDE SELF-SERVING HEARSAY**

6           Defendant's out of court statements are inadmissible hearsay when offered by defendant through

7   witnesses.  Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the <u>proponent</u> of the

8   evidence, and the evidence is not being offered <u>against</u> him.  Defendant cannot attempt to have "self-

9   serving hearsay" brought before the jury without the benefit of cross-examination.  <u>See</u>, <u>e.g.</u>, <u>United</u>

10  <u>States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1988).

11          The United States anticipates that Defendant may try to elicit potentially exculpatory statements

12  from witnesses for the government or the defense.  Thus, the United States moves, *in limine*, to prohibit

13  defense counsel from eliciting self-serving hearsay from either government witnesses or defense

14  witnesses.

15                                            **IV**

16                                    **CONCLUSION**

17          For the reasons set forth above, the Government respectfully requests that the Court grant its

18  motions in limine.

19          DATED: June 10, 2008.

20                                          Respectfully Submitted,

21                                          KAREN P. HEWITT
                                            United States Attorney

22

23                                          S/ Carlso O. Cantu
24                                          CARLOS O. CANTU
                                            Special Assistant United States Attorney
25                                          Attorneys for Plaintiff
                                            United States of America
26                                          Email: carlos.cantu@usdoj.gov

27

28

                                            15                          08CR0880-LAB

1

2                      **UNITED STATES DISTRICT COURT**

3                     **SOUTHERN DISTRICT OF CALIFORNIA**

4    UNITED STATES OF AMERICA,                    )  Criminal Case No.  08CR0880-LAB
                                                  )
5                           Plaintiff,            )
                                                  )  **CERTIFICATE OF SERVICE**
6          v.                                     )
                                                  )
7    JOSE REFUGIO ALVARADO-NOLASCO,               )
                                                  )
8                           Defendant.            )
9    ─────────────────────────────────────────

10   IT IS HEREBY CERTIFIED THAT:

11          I, Carlos O. Cantu, am a citizen of the United States and am at least eighteen years of age.  My
     business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

12          I am not a party to the above-entitled action.  I have caused service of **UNITED STATES'**
13   **MOTIONS IN LIMINE** on the following party by electronically filing the foregoing with the Clerk
     of the District Court using its ECF System, which electronically notifies them.

14          **Stephen D. Lemish**

15          I declare under penalty of perjury that the foregoing is true and correct. Executed on June 16,
16   2008.

17                                      s/ Carlos O. Cantu
                                        CARLOS O. CANTU

18

19

20

21

22

23

24

25

26

27

28

                                              16                              08CR0880-LAB